In re BLACK FARMERS
DISCRIMINATION
LITIGATION.

Misc. No. 08–0511 (PLF).

United States District Court,
District of Columbia.

Jan. 13, 2012.

Andrew H. Marks, Coffey Burlington, Miami, FL, David Joseph Frantz, Conlon, Frantz & Phelan, LLP, Washington, DC, Faya R. Toure, Selma, AL, Precious T. Martin, Sr., Precious Martin, Sr. & Associates, PLLC, Jackson, MS, Scott William Weinstein, Morgan & Morgan, P.A., Fort Myers, FL, for Black Farmers Discrimination Litigation.

---

## OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on a Motion for Reconsideration as to the Exclusion of BFAA ("Mot.") [Dkt. No. 239], filed by the Black Farmers and Agriculturalists Association, Inc. ("BFAA"). For the reasons stated below, the Court will deny the motion.

## I. BACKGROUND

After Congress passed the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill"), Pub. L. No. 110–246, 122 Stat. 1651, 2209 (2008), nearly two dozen lawsuits were filed in this Court seeking relief under Section 14012 of that Act, which created a new cause of action for individuals who—due to late filing—were unable to obtain a determination on the merits of discrimination claims submitted pursuant to the Consent Decree in *Pigford v. Glickman*, Civil Action No. 97–1978 (D.D.C.). The BFAA, along with several individuals, was named as a plaintiff in one

of these lawsuits, a suit filed on its behalf by the law firm of Morgan & Morgan, P.A. *See* Complaint, *BFAA v. Schafer*, Civil Action No. 08–1188 (D.D.C. July 9, 2008) [Dkt. No. 1]. In August 2008, the Court consolidated all Section 14012 lawsuits into one miscellaneous action. *See* Order, *In re Black Farmers Discr. Litig.*, Misc. No. 08–0511 (D.D.C. Aug. 8, 2011) [Dkt. No. 1]. The Court subsequently granted preliminary approval of a settlement agreement that was reached between the plaintiffs and the defendant, the Secretary of Agriculture, after extensive negotiations, *see* Order, Misc. No. 08–0511 (May 13, 2011) [Dkt. No. 172], and on October 27, 2011, the Court gave final approval to the settlement agreement after entertaining objections and conducting a fairness hearing. *See In re Black Farmers Discr. Litig.*, 820 F.Supp.2d 78 (D.D.C.2011) (Order and Judgment); *In re Black Farmers Discr. Litig.*, 856 F.Supp.2d 1 (D.D.C.2011, as amended Nov. 10, 2011) (Opinion).

On November 7, 2011, the BFAA filed a motion for reconsideration of its exclusion as a party. The BFAA contends that it was wrongly removed as a plaintiff in this action by Morgan & Morgan without its knowledge or consent. *See* Mot. at 1–2. In April of 2011, the attorneys who had represented the plaintiffs in Civil Action No. 08–1188 did indeed file an amended complaint that no longer included the BFAA as a party to the action. *See* Amended Class Action Complaint, *Copeland v. Vilsack*, Civil Action No. 08–1188 (D.D.C. Apr. 5, 2011) [Dkt. No. 20]. By that point, however, the BFAA was no longer represented by Morgan & Morgan—the firm and the BFAA having had a parting of the ways—and the organization claims that it was never consulted about its removal as a plaintiff in the lawsuit, a fact that the BFAA says it only discovered five months later. Mot. at 1–2. The BFAA now asks the Court to "[s]trike the portion of the Amended Complaint which removes BFAA from this litigation," to "[f]ully reinstate BFAA as a party Plaintiff in this matter," and to "fully include BFAA in the terms of the Court's Order of October 27, 2011." *Id.* at 4.[1]

---

1. On November 7, 2011, the BFAA also filed a    separate "Motion to Reconsider Order as to

The Court ordered the attorneys who had previously represented the BFAA and who filed the amended complaint that removed the organization as a plaintiff, Morgan & Morgan, to respond to the BFAA's motion to reconsider its exclusion. *See* Minute Order, Misc. No. 08–0511 (Dec. 2, 2011). The Court also ordered a response from the attorney who represented the BFAA at the time the amended complaint was filed. *See id.*

Having considered the BFAA's motion for reconsideration, the responses to that motion, and the BFAA's reply, and having carefully reviewed the dockets in Civil Action No. 08–1188 and Misc. No. 08–0511, the Court will deny the BFAA's motion. Although the motion for reconsideration does not specify the provision of the Federal Rules of Civil Procedure under which the BFAA seeks relief, the Court will analyze the motion as a request under Rule 59(e) to alter or amend the judgment. *See Piper v. U.S. Dep't of Justice*, 312 F.Supp.2d 17, 20 (D.D.C.2004) ("[M]otions to reconsider are routinely construed as motions to clarify or alter or amend judgment under Rule 59(e)." ) (citing *Emory v. Sec'y of the Navy*, 819 F.2d 291, 293 (D.C.Cir.1987)); *accord Nyman v. Fed'l Deposit Ins. Corp.*, 967 F.Supp. 1562, 1569 (D.D.C.1997) ("Regardless of the way a party characterizes a motion, a post-judgment filing challenging the correctness of the judgment falls within the perimeter of Rule 59(e)."). The BFAA asks the Court to "reconsider its Order entered herein on October 27, 2011." Mot. at 1. The motion for reconsideration was filed within twenty-eight days after the entry of that Judgment, as required by Rule 59, and it asks the Court to reconsider the terms of that Judgment; thus the

motion properly is considered under Rule 59(e). Moreover, the BFAA acknowledges in its reply that it seeks relief under Rule 59(e). *See* Sur Reply to Response in Opposition to Motion for Reconsideration as to the Exclusion of BFAA, Misc. No. 08–0511 (Dec. 23, 2011) ("Reply") [Dkt. No. 255], at 2.

Irrespective of the conduct of the BFAA's former attorneys in removing the organization as a plaintiff from this action without consulting with it and obtaining its consent, *but see infra* at 15–16, the BFAA nevertheless has failed to demonstrate that reconsideration of the Court's Order and Judgment approving the settlement agreement is warranted. Specifically, the BFAA has not identified any harm that it or its members have suffered or will suffer as a result of its termination from the litigation. Furthermore, the record indicates that the BFAA itself is at least partly to blame for the fact that this issue was not brought to the Court's attention before the entry of Judgment. As explained below, these considerations compel the conclusion that the BFAA has not demonstrated its entitlement to relief under Rule 59(e).[2]

### A. *The BFAA's Participation in this Litigation*

In July of 2008, the BFAA and three individual plaintiffs, through counsel, filed an action against the Secretary of Agriculture pursuant to Section 14012 of the newly enacted 2008 Farm Bill. *See* Complaint, *BFAA v. Schafer*, Civil Action No. 08–1188 (D.D.C. July 9, 2008) [Dkt. No. 1]. The BFAA purported to appear in the action "in its representational capacity on behalf of its members who are *Pigford* claimants entitled under the

---

Terms of Settlement Agreement," in which the BFAA argued—as it has before—that relief is still available to certain class members under Section 741 of the Agricultural, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of 1999, Pub. L. No. 105–277, 112 Stat. 2681, 2681–30 (1998). *See* Motion to Reconsider Order as to Terms of Settlement Agreement, Misc. No. 08–0511 (D.D.C. Nov. 7, 2011) [Dkt. No. 238]. The Court denied that motion, concluding that it merely advanced an argument that the Court had already considered and rejected. *See* Memorandum Opinion and Order, Misc. No. 08–0511 (Dec. 14, 2011) [Dkt. No. 243]. The Court noted that any uncer-

tainty about the BFAA's status as a plaintiff did not affect its disposition of the motion because the motion lacked merit. *Id.* at 1 n. 1.

**2.** The only plausible alternative would be to treat the BFAA's filing as a motion under Rule 60(b) for relief from a judgment or order. " '[T]he standards that govern Rule 60(b) are even more restrictive.' " *Duma v. Unum Provident*, 770 F.Supp.2d 308, 315 n. 6 (D.D.C.2011) (quoting *Taitz v. Obama*, 754 F.Supp.2d 57, 58 (D.D.C. Dec.9, 2010)). Thus, the BFAA's motion "would similarly fail if analyzed under the more restrictive standard of Rule 60(b)." *Id.*

2008 Farm Bill to seek a determination on the merits of their claims." *Id.* ¶ 5. The complaint sought three forms of relief: (1) a "declaration that [the BFAA's] members who are eligible '*Pigford* claimants' under the 2008 Farm Bill are entitled to receive a determination on the merits of their discrimination claims"; (2) a determination that each of the three named individual plaintiffs was the subject of unlawful discrimination by the U.S. Department of Agriculture ("USDA"); and (3) damages and discharge of debt for the three individual plaintiffs, along with judicial supervision and equitable distribution of the fund that had been appropriated by Congress for the payment of successful Section 14012 claimants. *Id.* ¶¶ 16, 18, 20–21. The BFAA and the individual plaintiffs were represented by attorneys employed by or associated with the law firm Morgan & Morgan, P.A. ("the Morgan & Morgan attorneys").

In August of 2008, a month after the complaint in *BFAA v. Schafer* was filed, the Court consolidated all Section 14012 lawsuits into one miscellaneous action for all purposes. *See* Order, Misc. No. 08–0511 (Aug. 8, 2008) [Dkt. No. 1].

In April of 2009, the Morgan & Morgan attorneys filed a "First Amended Complaint" in Civil Action No. 08–1188. *See* First Amended Complaint, *BFAA v. Vilsack,* Civil Action No. 08–1188 (Apr. 17, 2009) [Dkt. No. 16]. Under Rule 25(d) of the Federal Rules of Civil Procedure, Secretary of Agriculture Thomas J. Vilsack had been substituted for former Secretary of Agriculture Ed Schafer. The amended complaint contained the same allegations and sought the same relief as did the original complaint, but it added four new individual plaintiffs in addition to the three original individual plaintiffs and the BFAA, which was still listed as the lead plaintiff in the case. The amended complaint sought certification of a class under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure, *see id.* ¶¶ 4–35, and now sought damages and a determination on the merits not only for the individual plaintiffs but also for all putative class members. *See id.* ¶¶ 32, 34.

In March of 2010, the USDA notified the Court that it had signed a settlement agreement with the plaintiffs in the consolidated cases. *See* Defendant's Unopposed Motion to Withdraw His Motion to Certify a Rule 23(b)(1) Class, Misc. No. 08–0511 (Mar. 1, 2010) [Dkt. No. 137].

On May 19, 2010, attorney Dedrick Brittenum, acting as counsel for the BFAA, filed a motion to intervene in both the original *Pigford* case, Civil Action Nos. 97–1978 and 98–2693, and in the current litigation. *See* Motion to Intervene, Misc. No. 08–0511 (May 19, 2010) [Dkt. No. 146]. This motion was perplexing because the original *Pigford* case had been closed in 1999, and the BFAA was already a party to the present litigation. The motion referred to the recently signed settlement agreement and appears to have been designed to seek an opportunity for the BFAA to be heard on behalf of its members regarding that proposed agreement. *See id.* at 2.

The Morgan & Morgan attorneys report that upon learning of the BFAA's motion to intervene they "contacted Mr. Brittenum to discuss BFAA's status in the litigation and his role in representing them." Response in Opposition to Motion for Reconsideration, Misc. No. 08–0511 (Dec. 19, 2011) ("Opp.") [Dkt. No. 245], at 5. The attorneys state that they "provided Mr. Brittenum with some of the materials from the consolidated case and discussed the logistics of [their] withdrawing from representation of BFAA and Mr. Brittenum becoming counsel of record." *Id.* The attorneys further state that they "also discussed [with Mr. Brittenum] that BFAA would need to file a separate complaint or otherwise appear in the action once BFAA was formally represented by Mr. Brittenum." *Id.*

In July of 2010, Mr. Brittenum entered an appearance on behalf of the BFAA. *See* Plaintiff's Notice of Appearance, Misc. No. 08–0511 (July 9, 2010) [Dkt. No. 155]. The Morgan & Morgan attorneys report that they then "provided a motion to withdraw to BFAA for its signature so that [they] could file a notice of withdrawal with the Court." Opp. at 6. The attorneys state that they "did not receive anything back from BFAA or Mr. Brittenum." *Id.*

For its part, the BFAA similarly reports that "in the summer of 2010, BFAA elected to retain other representation," Mot. at 3, and the organization has furnished copies of the attorneys' notices of withdrawal signed by Mr. Burrell and dated July 14, 2010. *See id.*, Ex. G. By July 2010, therefore, all parties understood that the Morgan & Morgan attorneys were no longer representing the BFAA, which was now represented instead by Mr. Brittenum. On December 13, 2010, the Morgan & Morgan attorneys filed a formal motion to withdraw as counsel for the BFAA, *see* Motion to Withdraw Appearance for the Black Farmers and Agriculturalists Association, Inc., Civil Action No. 08–1188 (Dec. 13, 2010) [Dkt. No. 17], and the Court granted that motion the following day. *See* Minute Order, Civil Action No. 08–1188 (Dec. 14, 2010).

On March 30, 2011, nearly all the plaintiffs in the consolidated cases moved for preliminary approval of the proposed settlement agreement. *See* Motion for Preliminary Approval of Settlement, Misc. No. 08–0511 (Mar. 30, 2011) [Dkt. No. 161]. That motion was brought on behalf of three individually named plaintiffs—James Copeland, Earl Moorer, and Marshallene McNeil—who sought to be named as representatives of a proposed class. *Id.* at 2.

Two days later, on April 1, 2011, the Morgan & Morgan attorneys moved for permission to file a second amended complaint in Civil Action No. 08–1188. This motion was filed in both the individual action and the miscellaneous action. *See* Certain Plaintiffs' Motion and Memorandum in Support Requesting Leave to File a Second Amended Complaint, Civil Action No. 08–1188 (Apr. 1, 2011) [Dkt. No. 19]; *id.*, Misc. No. 08–0511 (Apr. 1, 2011) [Dkt. No. 162]. The motion explained that the revised complaint substituted the three named plaintiffs from the preliminary approval motion (plaintiffs Copeland, Moorer, and McNeil) for the individual plaintiffs previously named in Civil Action No. 08–1188. *Id.* at 1. It also explained that the revised complaint "sets forth factual and legal allegations that are the subject of the Motion for Preliminary Approval[.]" *Id.*

The proposed complaint filed by Morgan & Morgan, titled "Amended Class Action Complaint," was attached as an exhibit to the motion to amend. *See* Docket No. 19–1, Civil Action No. 08–1188; Docket No. 162–1, Misc. No. 08–0511. The Court granted the motion to amend on April 5, 2011, *see* Minute Order, Civil Action No. 08–1188 (Apr. 5, 2011); *id.*, Misc. No. 08–0511 (Apr. 5, 2011), and the new complaint was filed on the docket that day. *See* Amended Class Action Complaint, Civil Action No. 08–1188 (Apr. 5, 2011) [Dkt. No. 20]; *id.*, Misc. No. 08–0511 (Apr. 5, 2011) [Dkt. No. 163] ("Amended Class Action Complaint").

The April 1, 2011 amended class action complaint—which contains the case number only of Civil Action No. 08–1188 but was filed on the dockets of that case and the miscellaneous action—was signed by forty-five attorneys, representing nearly all counsel who represented clients in the consolidated cases, including the Morgan & Morgan attorneys. *See* Amended Class Action Complaint at 13–15. In place of the BFAA and the seven previously named individual plaintiffs, the complaint's heading names as plaintiffs the three individuals on whose behalf the motion for preliminary approval was filed. A footnote appears after the word "Plaintiffs" in the heading of the complaint, stating: "This amended complaint removes the Black Farmers and Agriculturalists Association, Inc. ("BFAA") as a plaintiff in this action. Previously named Plaintiffs Tommy Davis, Virginia Flynn Factor, and Ludora Valentine remain plaintiffs eligible for relief as putative members of the proposed Class." *Id.* at 1 n. 1.[3]

The amended complaint sought certification of a class under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure, a determination on the merits of *Pigford* claims for all class members, and damages for all class members. *See id.* ¶¶ 29–38.

---

3. The three "previously named" plaintiffs listed in the footnote are the three named plaintiffs who appeared in the original complaint in Civil Action No. 08–1188 along with the BFAA. The document makes no reference to the four named individuals who were added as plaintiffs in the first amended complaint.

In response to the Court's Order of December 2, 2011, directing them to respond to the BFAA's motion for reconsideration, the Morgan & Morgan attorneys write that "[t]he purpose of this amended complaint was to replace the plaintiffs originally named in the Individual Action [i.e., Civil Action No. 08–1188] with the three individuals who had moved the Court for preliminary approval of the class action settlement as well as to conform the operative complaint to the terms of that settlement agreement." Opp. at 6. The attorneys state that they "attempted to reach attorney Brittenum to discuss the filing of the motion for leave to file an amended complaint and the fact that the proposed Amended Class Action Complaint would not include the BFAA as a party. Counsel was unable to reach attorney Brittenum." Id. at 7.

At the time that the Morgan & Morgan attorneys attempted to reach Mr. Brittenum, however, it appears that he was no longer actively representing the BFAA, although he had not filed a notice of withdrawal and consequently still appeared on the docket as counsel for the BFAA. Mr. Brittenum reports that "[b]y letter dated 2 October 2010, The Black Farmers & Agriculturalists Association, Inc., notified counsel that his representation was no longer needed in the above matter." Response to Motion for Reconsideration as to the Exclusion of BFFA [sic] and Motion to Withdraw Appearance, Misc. No. 08–0511 (Dec. 20, 2011) [Dkt. No. 246].[4] By the Spring of 2011, therefore, the BFAA was no longer represented either by the Morgan & Morgan attorneys or by Mr. Brittenum. No other attorney filed a notice of appearance on the BFAA's behalf until two weeks ago. See Notice of Appearance by Paul A.

Robinson Jr., Misc. No. 08–0511 (Dec. 29, 2011) [Dkt. No. 254].

Despite the confused state of its legal representation or lack thereof, the BFAA nevertheless was afforded, and took advantage of, the opportunity to express its views regarding the proposed class action settlement agreement. After granting preliminary approval of the settlement, the Court set a deadline for interested parties to submit objections to the settlement and a date for a final fairness hearing. See Order Granting Preliminary Approval of Settlement Agreement, Misc. No. 08–0511 (May 13, 2011) [Dkt. No. 172], at 12–13; Order, Misc. No. 08–0511 (May 20, 2011) [Dkt. No. 174]. Mr. Burrell submitted a twenty-eight page document that articulated a number of objections to the settlement agreement. See Notice of Appearance—Fairness Hearing, Misc. No. 08–0511 (Aug. 26, 2011) [Dkt. No. 208]. Mr. Burrell later appeared at the hearing, held on September 1, 2011, and spoke at length on behalf of the BFAA's members. The Court considered Mr. Burrell's written and oral objections and discussed them in its Opinion approving the settlement agreement, repeatedly citing the BFAA and Mr. Burrell by name. See In re Black Farmers Discr. Litig., 856 F.Supp.2d 1, 31–32, 36–37, 38–39, 42 n. 1 & n. 5 (D.D.C.2011, as amended Nov. 10, 2011).

### B. The BFAA's Motion for Reconsideration

The Court approved the settlement agreement on October 27, 2011. See In re Black Farmers Discr. Litig., 820 F.Supp.2d 78 (D.D.C.2011). On November 7, 2011, now represented by attorney Paul A. Robinson Jr., the BFAA filed its motion for reconsideration. In this motion, the BFAA states that

4. In fact, Mr. Brittenum remained listed as counsel on the docket for well over a year after the BFAA relieved him of his services. Not until December 2011, when the Court ordered him to respond to the BFAA's motion for reconsideration, did Mr. Brittenum belatedly move to withdraw his appearance. In explanation for his failure to provide notice of his withdrawal, Mr. Brittenum states that he "hoped to notify the Court that we remained in the case representing individual clients and not the Black Farmers & Agriculturalists Association, Inc.," that "[t]o date counsel has not secured any of the aforementioned black farmers as clients," that "[c]ounsel has not secured the signature of the Black Farmers & Agriculturalists Association, Inc. on a Notice of Withdrawal of Appearance," and that "[c]ounsel apologizes for not giving notice of withdrawal earlier." Response to Motion for Reconsideration, Misc. No. 08–0511 (Dec. 20, 2011) [Dkt. No. 246], at 1. Whether Mr. Brittenum "hoped" to secure other clients has nothing to do with his obligation to the BFAA, the other parties in this case, and the Court to give prompt notice of his withdrawal as counsel.

not until September 7, 2011, did it discover that it was no longer a plaintiff in Civil Action No. 08–1188 and that it had been removed by the amended class action complaint filed in April of 2011. Mot. at 1–2. The BFAA states: "No principal of BFAA, nor any of its officers or directors had any knowledge of the effort to exclude or remove BFAA from this litigation. Moreover, no principal or Officer of BFAA ever consented to nor authorized anyone to remove BFAA from this litigation." *Id.* at 2; *see also id.*, Ex. A (Affidavit of Thomas Burrell) ("Neither I, as President, BFAA, nor any other officer or director of the BFAA had any knowledge of the motion for removal of BFAA from this litigation."). The BFAA argues that the Morgan & Morgan attorneys "had no authority to remove BFAA from this litigation as Morgan and Morgan was not representing BFAA in April of 2011" when the amended complaint was filed. Mot. at 3–4. The BFAA therefore asks the Court to "[s]trike the portion of the Amended Complaint which removes BFAA from this litigation," to "[f]ully reinstate BFAA as a party Plaintiff in this matter," and to "include BFAA in the terms of the courts [sic] Order of October 27, 2011." *Id.* at 4.

## II. LEGAL STANDARD

■ "A motion to alter or amend judgment under Rule 59(e) is discretionary with the court and need not be granted unless the Court finds that there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *MDB Communications, Inc. v. Hartford Cas. Ins. Co.*, 531 F.Supp.2d 75, 79 (D.D.C.2008) (quoting *Ciralsky v. Central Intelligence Agency*, 355 F.3d 661, 671 (D.C.Cir.2004)). "New evidence, as that term is used in Rule 59(e), means evidence which 'is newly discovered or previously unavailable despite the exercise of due diligence.' " *Int'l Painters and Allied Trades Indus. Pension Fund v. Design Technologies*, 254 F.R.D. 13, 19 (D.D.C.2008) (quoting *Niedermeier v. Office of Baucus*, 153 F.Supp.2d 23, 29 (D.D.C.2001)). Although "courts have not precisely defined what constitutes 'manifest injustice,' " *Piper v. U.S. Dep't of Justice*, 312 F.Supp.2d at 22,

the D.C. Circuit has indicated that it does not exist where " 'a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered.' " *Id.* at 23 (quoting *Ciralsky v. Central Intelligence Agency*, 355 F.3d at 671).

■ Rule 59(e) motions are " 'disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances.' " *Duma v. Unum Provident*, 770 F.Supp.2d at 312 (quoting *MDB Communications, Inc. v. Hartford Cas. Ins. Co.*, 531 F.Supp.2d at 79). Parties "may not use a Rule 59 motion to raise new issues that could have been raised previously." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C.Cir.1993).

## III. DISCUSSION

Of the grounds for relief available under Rule 59(e), only two are potentially implicated by the BFAA's motion for reconsideration: "the availability of new evidence" and "the need to ... prevent manifest injustice." *MDB Communications, Inc. v. Hartford Cas. Ins. Co.*, 531 F.Supp.2d at 79.

### A. New Evidence

■ The BFAA brings to the Court's attention the circumstances of its removal as a plaintiff, stating that it was unaware of the removal until September 2011. The Court finds that this information does not constitute "new evidence" as that term is used in Rule 59(e). The information was known by the BFAA before the Court issued its Order and Judgment on October 27, 2011, and was available to the BFAA long before that date.

The Morgan & Morgan attorneys moved for leave to file the amended class action complaint on April 1, 2011, and the complaint was filed on April 5, 2011. The first page of this complaint, which was attached as an exhibit to the April 1 motion, clearly indicates that the BFAA had been removed as a plaintiff. *See* Amended Class Action Complaint at 1. Electronic notice of the motion was sent to Mr. Brittenum, who was still listed as the BFAA's counsel and had a professional obligation to keep his client advised of developments in the case. *See* Opp., Ex.

D. Moreover, the motion and the complaint were publicly available and could be accessed on the internet by anyone with a PACER account. In addition, from the date that the amended complaint was filed on April 5, 2011, the docket for Civil Action No. 08–1188 would clearly have indicated "TERMINATED: 04/05/2011" beneath the BFAA's name at the top of the docket, as it does now.

Furthermore, the BFAA by its own admission was aware of its termination no later than September 7, 2011—more than seven weeks before the Court's October 27, 2011 Order and Judgment was entered. *See* Mot. at 1–2. But the BFAA did not move the Court for reinstatement until two months later, after the Court had already approved the settlement agreement.

The evidence that the BFAA presents to the Court, therefore, is not "newly discovered." *Int'l Painters and Allied Trades Indus. Pension Fund v. Design Technologies,* 254 F.R.D. at 18. Nor was it "previously unavailable despite the exercise of due diligence." *Id.* With proper diligence, the BFAA could have presented its grievance to the Court at any time between April and October 2011; it certainly could have done so after September 7, 2011, at which point it unequivocally was aware of its termination. Issues that "could have been raised previously" cannot form the basis of post-judgment relief under Rule 59. *Kattan by Thomas v. District of Columbia,* 995 F.2d at 276; *see id.* at 277 (finding that defendant waived issue "by not raising it in a timely manner" before judgment); *Int'l Painters and Allied Trades Indus. Pension Fund v. Design Technologies,* 254 F.R.D. at 18, 19 (observing that Rule 59 motions are not granted where "the moving party is using the motion to assert arguments that could have been raised prior to final judgment," and finding that "all of Plaintiff's allegedly new evidence was previously available to Plaintiff and could have been timely submitted to the Court if Plaintiff had exercised due diligence").

### B. *Manifest Injustice*

■ The Court finds that no manifest injustice has occurred. This does not mean that the Court condones the method through which the BFAA was terminated from this case without its knowledge or consent. It is undisputed that by April of 2011 the Morgan & Morgan attorneys no longer represented the BFAA, having formally withdrawn their representation of the organization the previous December. It also is undisputed that the attorneys never obtained the consent of the BFAA or its counsel of record before moving to file the amended complaint that ended the BFAA's party status on April 1, 2011. The Morgan & Morgan attorneys cite no authority that permits an attorney to drop a plaintiff from a civil action when the attorney neither represents that plaintiff nor has obtained the plaintiff's consent to be removed. The attorneys explain that they "attempted" to reach Mr. Brittenum (who was listed on the docket as the BFAA's counsel) to discuss the matter but were "unable" to do so. Opp. at 7. Having failed to obtain consent from the BFAA, a party they no longer represented, or its counsel of record, the attorneys lacked authority to unilaterally remove the BFAA from the action. Nor do the attorneys explain why they did not bring these matters to the Court's attention at the time that they sought leave to amend the complaint.

Although the Court cannot approve of the way in which the BFAA was removed as a party, it also finds, for the reasons explained below, that no manifest injustice has occurred requiring the Court to amend its Order and Judgment. The BFAA has not identified any harm that it or its members suffered or will suffer from the organization's removal as a plaintiff. And to the extent that any adverse ramifications accrue from the BFAA's removal, the organization is partly responsible for those consequences through its own lack of diligence.

As explained, the BFAA purported to appear in this action exclusively "in its representational capacity on behalf of its members who are *Pigford* claimants entitled under the 2008 Farm Bill to seek a determination on the merits of their claims." First Amended Complaint, Civil Action No. 08–1188 (Apr. 17, 2009) [Dkt. No. 16], at 6.[5] The BFAA sought

---

**5.** The BFAA may or may not have had represen-    tational standing to appear as a plaintiff in this

certification of a class of all individuals who are entitled to relief under the 2008 Farm Bill, *id.* ¶¶ 21–26, along with a declaration that class members are entitled to receive a determination on the merits of their discrimination claims, a determination on the merits for each class member, and damages and discharge of debt for each successful class member. *Id.* ¶¶ 27–35. The settlement agreement approved by the Court certified just such a class and established a process, which is now being implemented, for all class members to obtain the relief sought. *See In re Black Farmers Discr. Litig.,* 856 F.Supp.2d 1 (D.D.C.2011); Settlement Agreement, Misc. No. 08–0511 (Mar. 30, 2011) [Dkt. No. 161–3]. Thus, all members of the BFAA who are entitled to relief under the 2008 Farm Bill are members of the settlement class. Little surprise, then, that nowhere in the BFAA's motion or reply does it point to any injury that either it or its members have suffered or will suffer as a result of its termination from the litigation. The organization protests the manner of its removal—rightly, in the view of the Court—but it never explains what injustice is in need of correction, and the Court perceives none.

To the extent that the BFAA objects to any particular aspects of the settlement agreement, the organization and Mr. Burrell presented those objections to the Court through written submissions and oral presentation at the fairness hearing. As explained above, the Court considered those objections and specifically addressed them in its Opinion approving the settlement. "For all practical purposes," as the Morgan & Morgan attorneys accurately note, "the Court treated BFAA and Mr. Burrell as though they were parties or class members and provided them ample opportunity to be heard even after BFAA had been removed from the operative complaint." Opp. at 11–12. The BFAA's removal as a plaintiff thus had no effect on the organization's ability to influence the Court as it considered the proposed settlement agreement.

Moreover, when the Court issued its Order and Judgment approving the settlement, all of the individual actions that were consolidated into the miscellaneous case—including Civil Action No. 08–1188—were dismissed, and the claims process established by the settlement agreement went into effect. *See In re Black Farmers Discr. Litig.,* 820 F.Supp.2d 78, 83–85 (D.D.C.2011). Had the BFAA remained a plaintiff on this date, the result would have been identical: the case in which the BFAA was a party, No. 08–1188, would have been dismissed along with all the other cases and the miscellaneous action. *Cf. id.* at 83–84 (listing, among the dismissed cases, another action in which an advocacy organization appeared as a plaintiff, *National Black Farmers Association v. Schafer,* Civil Action No. 08–0940). The settlement agreement—which the Court was tasked with either accepting or rejecting—simply includes no role for private advocacy organizations like the BFAA. Notably, Mr. Burrell in his written or oral submission never objected to the lack of an institutional role for the BFAA or other advocacy organizations in the settlement agreement, although he objected to many of its other facets. *See* Notice of Appearance—Fairness Hearing, Misc. No. 08–0511 (Aug. 26, 2011) [Dkt. No. 208]. Accordingly, the BFAA's current request to "include BFAA in the terms of the courts [sic] Order of October 27, 2011" rings hollow. The BFAA never asked to be "included" within the terms of the Order before it issued, and the organization fails to explain what it would mean to "include" the BFAA now.

■ To the extent that the BFAA suffers *any* adverse consequences from its lack of party status at the time of Judgment, these consequences do not amount to a manifest injustice because the BFAA's own conduct contributed to them. As described above, the BFAA admits that it was aware of its removal no later than September 7, 2011. *See* Mot. at 1–2. Instead of immediately moving for reinstatement, the BFAA waited two months, until after the Court had issued

action; its standing was never tested by the defendant, and the Court had no occasion to analyze it.

its Order and Judgment, before belatedly seeking post-judgment relief. "[M]anifest injustice does not exist where, as here, a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Piper v. U.S. Dep't of Justice,* 312 F.Supp.2d at 23 (quoting *Ciralsky v. Central Intelligence Agency,* 355 F.3d at 671).

Moreover, with proper diligence, the BFAA could have discovered its termination in April 2011 and taken remedial action at any point thereafter. The organization's failure to keep apprised of its own case—or to retain counsel who would at the very least perform this function—fatally undermines any claim of manifest injustice resulting from that failure. *See Fox v. American Airlines, Inc.,* 389 F.3d 1291, 1293, 1296 (D.C.Cir.2004) (finding that adverse judgment and dismissal of case resulting from counsel's failure to monitor the court's docket did not constitute "manifest injustice"); *Kattan by Thomas v. District of Columbia,* 995 F.2d at 276 (finding that party "waived its argument ... by not raising it before judgment" and noting that a party "may not use a Rule 59 motion to raise new issues that could have been raised previously"). The Court therefore concludes that no manifest injustice has occurred and that the BFAA has failed to establish the "extraordinary circumstances" that would warrant relief under Rule 59(e).

### C. Misleading Representations by the BFAA

Finally, the Court feels compelled to remark that even if the BFAA had remained a plaintiff at the time of the Court's Order approving the settlement agreement, and even if that agreement had included some mechanism by which private advocacy organizations like the BFAA could play an institutional role in the case, the Court would not likely have approved any agreement in which the BFAA were granted an official role carrying the imprimatur of the Court. In part, this is because the BFAA and Mr. Burrell have consistently failed to demonstrate that they have a sound grasp of the legal issues surrounding the rights of *Pigford* claimants eligible for relief under the 2008 Farm Bill. Even more important, the Court is deeply concerned that some of the BFAA's and Mr. Burrell's conduct and representations have created a serious risk of misleading and in fact harming the interests of the very individuals on whose behalf they purport to advocate.[6]

For example, at the same time that the BFAA filed its motion to be reinstated as a plaintiff, it also filed a separate motion to reconsider the terms of the settlement agreement, in which it argued that many *Pigford* claimants retain the right to sue under a 1998 statute, a clearly meritless argument that was flatly rejected by this Court in approving the settlement. *See In re Black Farmers Discr. Litig.,* 856 F.Supp.2d 1, 31–32 (D.D.C.2011, as amended Nov. 10, 2011); *supra,* note 1. Shortly after filing this motion, the BFAA disseminated the following message to its members:

Dear BFAA, Inc. Member:

On Monday, November 7, 2011, the Black Farmers And Agriculturalists Association, Incorporated (BFAA, Inc.) filed, by and through its legal representative, an objection to the Pigford II lawsuit (In re BLACK FARMERS DISCRIMINATION LITIGATION, Misc. No. 08–0511 (PLF)). In sum, this appeal will preserve BFAA, Inc.'s (members) constitutional right to argue (case or controversy), before the Court of Appeals and/or the U.S. Supreme Court, if necessary, to correct any Due Process and/or Equal Protection Violations that it believes might work to deprive its MEMBERS of their rights in the Settlement

---

6. Such conduct by Mr. Burrell is not a new development, and this is not the first time that the Court has taken him and the BFAA to task for misleading would-be claimants. In 2005, the Court explained that Mr. Burrell had "given false hope to thousands of African American farmers" by claiming publicly that the Consent Decree from the original *Pigford* case would be reopened and modified, a patently unfounded prediction.

*See Pigford v. Veneman,* 355 F.Supp.2d 148, 169 (D.D.C.2005); *see also Pigford v. Veneman,* 225 F.R.D. 54 (D.D.C.2005) (criticizing Mr. Burrell and his former attorney James Myart for misusing the Court's docket, improperly purporting to speak on behalf of all plaintiffs, and lodging baseless claims of misconduct against defendant's counsel).

Agreement; including that which was approved by Federal District Court, Judge Friedman on October 28, 2011.

**However, this appeal will only effect BFAA, Inc. MEMBERS.**

**If you are not a "current (dues paying) member," this appeal and its legal implications may not affect or protect your participation in this lawsuit.**

To check your standing with BFAA, Inc., please call 901.522.8880. Thank you!

Regards,

Thomas Burrell

President

*BFAA, Inc. Files Objection to Pigford II* (Nov. 11, 2011), http://www.mybfaa.org/?p= 1516 (last visited Jan. 13, 2012) (emphasis added). The BFAA's claim that its motion "will only effect BFAA, Inc. MEMBERS" and that the appeal "may not affect or protect [its members'] participation in this lawsuit" unless the members pay dues to the BFAA has no legal foundation, is misleading, and almost resembles an act of extortion.

It also appears that the BFAA has misrepresented the meaning of the Court's orders and its own status in the litigation. For instance, in February 2011 the BFAA allegedly promulgated notice of a workshop for would-be claimants in which it stated:

> The Black Farmers and Agriculturalists Association, Inc. (BFAA, Inc.) has associational standing[1] in the herein above referenced lawsuit. This standing was ORDERED by the court on August 8, 2008 (THE BLACK FARMERS AND AGRICULTURALISTS ASSOCIATION et. al., v. TOM VILSACK, Civil Action No. 08–1188(PLF), IN re BLACK FARMERS DISCRIMINATION LITIGATION, Civil Action No. 08–mc–0511 (PLF)).

Dkt. No. 158–2, Misc. No. 08–0511 (Feb. 11, 2011).[7] In fact, the Order to which this notice refers merely consolidated the many lawsuits filed under Section 14012 of the 2008 Farm Bill into this miscellaneous action. *See* Order, Misc. No. 08–0511 (Aug. 8, 2011) [Dkt. No. 1]. It did not rule that the BFAA or any other organization had associational standing in the action.

More recently, the media has reported that Mr. Burrell has "said he would like to ask black farmers, including 10,000 his group represents in Mississippi, Alabama and Tennessee, to weigh the consequences of waiving their right to appeal before they sign the agreement" to pursue a claim under the settlement agreement in this case. Sara Patterson, *Local Advocate Asks for Timeout on Black Farmers Settlement*, COMMERCIAL APPEAL (Dec. 30, 2011).[8] In fact, individuals eligible for relief under the 2008 Farm Bill do not waive any right to appeal by filing a claim; this right was relinquished by the plaintiffs in this action in exchange for the benefits of the settlement agreement. *See In re Black Farmers Discr. Litig.*, 856 F.Supp.2d at 22–23, 36–37. Because the terms of the settlement agreement are binding on all class members whether or not they file claims, *see In re Black Farmers Discr. Litig.*, 820 F.Supp.2d 78, at ¶ 19, individuals cannot preserve a right to appeal by choosing not to submit a claim. In fact, if potential claimants do not file a claim during the claims period which ends on May 11, 2012, they will lose forever their right to share proportionately in the $1.25 billion appropriated by Congress for this limited-fund settlement.

Mr. Burrell can object, and has objected, to the lack of a right to appeal claim determinations under the settlement agreement. *See In re Black Farmers Discr. Litig.*, 856

---

**7.** This notice and workshop were brought to the Court's attention when other plaintiffs in the consolidated cases moved for a temporary restraining order to prevent the BFAA from disseminating "highly misleading and inaccurate information to black farmers who may be attempting to determine if they are eligible to seek relief under Section 14012 of the 2008 Farm Bill." Certain Plaintiffs' Motion for a Temporary Restraining Order, Misc. No. 08–0511 (Feb. 2, 2011) [Dkt. No. 158], at 1. The Court denied that

motion because the requirements for issuance of a temporary restraining order were lacking in several respects. *See* Memorandum Opinion and Order, Misc. No. 08–0511 (Feb. 11, 2011) [Dkt. No. 160].

**8.** *Available at* http://www.commercialappeal.com/news/2011/dec/30/black-farmers-plan-rally-against-discrimination-se/=1 (last visited Jan. 13, 2012).

F.Supp.2d at 36–37 (describing objections by Mr. Burrell and others and explaining why this feature does not render the settlement agreement unfair). But it is one thing for Mr. Burrell and the BFAA to persist in their particular beliefs about the legal rights of *Pigford* claimants and to advance those beliefs through litigation and appeal. It is quite another thing to direct statements toward potential claimants that may induce them to forgo tens of thousands of dollars to which they may be legally entitled, based solely on views that have not been accepted by any court.

While the Court finds it important to remark on these matters out of concern for the integrity of the claims process and the ability of eligible individuals to obtain determinations on their discrimination claims, these matters do not bear on the legal question presented by the BFAA's motion for reconsideration. That motion will be denied because, as explained above, the BFAA has not demonstrated "the availability of new evidence," "the need to … prevent manifest injustice," or any of the other criteria that would compel the Court to take the unusual step of amending its Order and Judgment.

## IV. CONCLUSION

For reasons stated in this Opinion, the BFAA's motion for reconsideration will be denied.

Accordingly, it is hereby

ORDERED that the Motion for Reconsideration as to the Exclusion of BFAA [Dkt. No. 239] is DENIED.

SO ORDERED.